CUNNINGHAM (WATSON v.). See Case No. 17,280.

CUPPLES (LAWRENCE v.). See Case No. 8,135.

## Case No. 3,486.

### CURE v. BULLUS.

[1 Abb. Adm. 555;[1] 7 N. Y. Leg. Obs. 345.]

District Court, S. D. New York. Oct. Term, 1849.

#### EXONERATION OF BAIL IN ADMIRALTY.

1. The practice of courts of admiralty does not admit of a surrender of the principal in exoneration of bail.

2. In order to be discharged from a bail bond or stipulation given in admiralty, the party must establish fraud, deceit, duress, illegality of consideration, or other matter such as at law or in equity would avoid a common money bond, or would entitle a party to be relieved from it.

This was a libel in personam by Peter Cure, assigneo of Benson F. Town, libellant, against William A. Bullus, to recover for supplies furnished by libellant's assignor to a vessel owned by respondent.

The defendant was arrested in the cause on a warrant against his person, pursuant to the rules of the supreme court applicable to cases of like description, and one Farnham, a resident of the village of Newburgh, became fidei jussor, or stipulator, for the respondent. Application was now made to relieve the stipulator from his undertaking. The condition of the undertaking was, that "if the respondent should personally appear before the district court of the United States for the southern district of New York, on the 11th day of September instant, at the city hall in the city of New York, to answer the said libel, and abide by all orders of the court, interlocutory or final, and pay the money awarded by the final decree in the suit," then the undertaking should be void. It appeared by affidavits read on behalf of the stipulator, that the respondent was arrested at Newburgh by one Brown, a deputy marshal, who, at the time of the arrest, represented that the undertaking was merely for the appearance of the respondent at court, and that the respondent had twelve days to appear; that the stipulator was thereby deceived and induced to sign the undertaking, which he would not have done had he been aware of his true position under it; that the respondent, his principal, was entirely insolvent and unable to respond to the stipulator in case he was rendered liable on this undertaking; and that Proudfit, an attorney, resident in Newburgh, and who was consulted by the stipulator at the time of signing the undertaking, told him that the marshal was correct in his representations as to the effect of the bond. It appeared by affidavits read in opposition to the motion, that no instructions had been given to the deputy marshal by the libellant or his proctor to make any such representations; that Proudfit, the attorney consulted by the stipulator, had been present when the latter executed the bond, and had advised him in respect to the matter; and that Proudfit and the stipulator had both of them read over the bond before the execution of it. The stipulator offered to surrender his principal. There were two other bonds given under like circumstances in two other causes; in respect to which like motions were also made; all being heard as one.

E. C. Benedict, contended, that the court under its general equitable powers, had the right to relieve the bail from his undertaking in a case like this, where it was evident that there had been, to say the least, a mistake of his liability.

D. McMahon, opposed.

1. The undertaking of the bail in admiralty is in the nature of a stipulation for the debt, and he becomes thereby a fidei jussor for the principal. Neither the surrender of the principal, nor even the death of the party, can discharge the bail. 2 Browne, Civ. & Adm. Law, 412; Hall, Adm. Pr. 25, note.

2. The representations of the deputy marshal were not directed to be made by the libellants, and they were nothing more than the representations of a third party. The libellants, consequently, are not bound by them.

3. It appears that the stipulator read the conditions of the bond, which were plain and easy to be understood. He cannot complain of a mistake which has happened through his own carelessness.

BETTS, District Judge. The defendant moves that three bail bonds, entered into by him and one Farnham to the marshal of this district, be vacated, or that the bail be relieved therefrom on the surrender of the respondent to be committed in the respective suits.

The respondent was arrested on the 10th day of September last, at Newburgh, upon three warrants in personam, returnable in this court on the 11th of September, and on the same day gave the bonds in question to the marshal.

The condition of each bond is made conformable to rule 3 of the supreme court; and is, that the respondent, Bullus, "shall personally appear before the district court of the United States for the southern district of New York, on the 11th day of September instant, at the city hall of the city of New York, to answer the said libel, (the filing of which is previously stated, together with the cause of action,) and abide by all orders of the court, interlocutory or final, and pay the money awarded by the final decree of the said court," &c.

---

[1] [Reported by Abbott Brothers.]

The bonds were duly signed and sealed by the respondent and his bail, and thereupon he was discharged from arrest in the three suits. The bonds, (except names of parties, dates, and the sums of money in demand, $52.97 in one, $246.69 in one, and $49.50 in the other, with designation of the particular cause of action in the respective suits,) are in print.

The respondent, by his own affidavit, sets up in avoidance of the bonds, that he inquired of the deputy marshal who served the warrants, what the effect and obligation of the undertaking was, and the officer informed him and his bail that it was nothing more than to secure the personal appearance of the respondent, who had twelve days after the return day of the process to come into court and perfect his appearance in the cause. The bail swears to the same statement of facts, and asserts that he subscribed the bonds in reliance upon those representations, and he would not have undertaken for the debts.

A lawyer in the village of Newburgh was consulted by the principal and bail before the bonds were executed, who says he questioned the deputy marshal, and was informed by him that the respondent had twelve days after the return day of the process within which to enter his appearance, before judgment would be entered against him, and that by signing the bail bonds the bail would become liable no further than for the appearance of the defendant; and upon that information deponent told the bail he would be safe in signing the bonds. The attorney further swears that he is not a proctor of this court, or familiar with its practice, but in glancing over the bail bonds, he was of the impression that the obligors were only bound for the appearance of the defendant, and he so informed them. He further says, he is counsel for the respondent, and knows his affairs intimately, and that he is entirely insolvent.

An affidavit of the deputy marshal is also added, stating that he supposed a defendant had a certain number of days to enter his appearance after the return day of the writs, and so represented it to the defendant and his bail, in good faith and solely for the purpose of giving them information to which he supposed they were entitled.

After the above papers were served and notices of the motion given, the deputy marshal drew up a statement in his own handwriting, and made oath to it, detailing with more particularity the representations he made on the subject. He says he had no conversation at all, he believes, with the bail, who began signing the bonds as soon as he came into the room where the parties all were, the attorney reading over to him a part of the bond while he was in the act of signing. That the attorney inquired of the witness what was the meaning of return day of the warrants, and whether the defendant had not some

days after that to enter his appearance, and if it was not twelve days. The witness answered that he was new in the business and could give no certain information, but he supposed that was the effect of the undertaking, although he could not say that it was twelve days to which the party would be entitled; and that he did not attempt to give any advice or certain information on the subject. It was a casual talk with the lawyer and deponent, and he certainly did not intend to mislead any of the parties. The attorney intimated that he understood the nature of the undertaking, and said he thought time was given the respondent after the return day, and that the time was twelve days.

The effect of the application upon these facts is, that the bail be now allowed to surrender the principal, to which the principal assents; or, that he be discharged from the bonds as having been executed by him under an entire mistake, induced by the deputy marshal, of the nature of their obligations.

The admiralty practice does not admit of a surrender of the principal in exoneration of bail. The appearance of the party arrested, which the bail stipulation guarantees, is not for the purpose of having the person of the respondent present to satisfy the final decree of the court. It is to secure his attendance to submit to interrogatories or sanction intermediary proceedings to which his concurrence may be necessary in the progress of the suit, or to put in and perfect the bail for the respondent, which the stipulation in the arrest may be only preliminary to. Clarke, Prax. tits. 4, 5, 12; 1 Browne, Civ. & Adm. Law, 256; 2 Browne, Civ. & Adm. Law, 361, note. In maritime courts, the stipulation and the appearance of the party is denominated praetorian, that is, an undertaking to the court, and not to the adversary party. Clarke, Prax. tit. 9; 2 Browne, Civ. & Adm. Law, 355, 357. But when bail by bond or stipulation is given, the obligation imposed on the fidei jussores is judicatum solvi; that is, to see the costs and condemnation paid at all events (3 Bl. Comm. 292; Hall, Adm. Pr. 12, 29; 2 Browne, Civ. & Adm. Law, 356), and this obligation enures to the creditor or actor as an absolute security for his debt. Wood, Civ. Law, bk. 3, c. 3, § 2. In our practice, this obligation may be entered into on arrest. Sup. Ct. Rules, 3. This undertaking is not discharged or affected by the surrender of the principal bodily, as in common-law actions (Hall, Adm. Pr. 25, note; 2 Browne, Civ. & Adm. Law, 412; Conk. Adm. Pr. 458), and it matters not whether the obligation is assumed on the arrest by bond, or on appearance in court by way of stipulation. In the sense of the common law applicable to bail, the bail in admiralty are absolutely fixed from the time the bond or stipulation is entered into. There is no alternative in the undertaking, as at common law, which being performed acquits the obligation. Nor will the bankruptcy of the parties, or laches in

prosecuting the suit, discharge the bail. The Vreede, 1 Dod. 2; The Harriett, 1 W. Rob. Adm. 195. The stipulation rests on the doctrine of principal and surety in positive contracts, and is governed by the rules of law and equity applicable to those contracts (The Harriett, Id. 197), with the additional consideration, that as the undertaking is not only to satisfy the action but to abide the adjudication of the court in the matter, it is entitled to a more enlarged consideration in admiralty than at law, and when given as a substitute for the thing arrested, may be enforced beyond the mere money amount recovered by the promovent. The Nied Elwin, 1 Dod. 50.

In asking a discharge, therefore, from a bail bond, the parties must, in admiralty, place their claim upon the same footing as if the release sought was from a money bond of any other denomination and absolute in its terms. Fraud, deceit, duress, or illegality of consideration, or some matter showing the obligation void ab initio, or rendered inoperative by something subsequently occurring, must be established to affect its validity.

Courts of admiralty are governed by equitable principles (2 Woodb. & M. 60 [Packard v. The Louisa, Case No. 10,652]), but equity will not cancel an obligation because the contracting party misapprehended the extent of his liability under it, unless he has been misled by the acts or declarations of the one benefited by it. Mistake in the law resulting from the inattention or ignorance of the party bound, will not be regarded in equity as a reason for avoiding a contract. 1 Story, Eq. Jur. §§ 111, 113; 6 Johns. Ch. 169.

Here there can be no reasonable ground for alleging a mistake or misapprehension of any facts connected with the transaction. The bail bond received by the parties, stipulated that the respondent should appear in court on a day designated, and that the stipulators would pay the money awarded by the final decision of the court. These two facts were directly brought home to their notice, at least the evidence that they were so must be regarded as conclusive against the obligors. The mistake and ignorance alleged in their behalf then is, that they did not understand the legal effect of their contract, and supposed it was limited to the personal appearance of the party in court. Even if this excuse rested upon an engagement complex or equivocal in its terms, there would be great difficulty in bringing it within any recognized principle of courts of equity, affording relief to obligors against their contracts. But when the stipulation is explicit and plain, and the mistake set up is, that the interpretation given the contract by others, and not the words themselves, was confided in, the whole reason for interference of equity is taken away.

It must, moreover, be considered that the misapprehension asserted here, was no way induced by the libellant or his proctor. Neither was present when the bond was executed, nor had taken any part in bringing the obligors into the agreement. It was wholly voluntary with them, and sought for independent of his concurrence or knowledge. Nor were the representations of the deputy marshal, in fact or law, chargeable upon the libellant.

If that officer had chosen to say the bail bond was an idle formality, that the respondent was not in law bound to give bail, that the court would cancel the bond on its presentation before them, and that no liability whatever could be incurred by the bail in signing it, such representations, however confidingly accepted by the obligors, could never in law or equity operate to release them from their formal signature and execution of it. In any such suggestions the deputy could not be acting officially, or as agent of the libellant, and both as to him and the marshal, and as to the respondent and bail, he would be a mere stranger making representations upon his individual responsibility alone. His representations, however, if erroneous, it is conceded, were made innocently and from ignorance on his part, and with no purpose to mislead the respondent or his bail. Misrepresentations of that character, even if made by an agent empowered to form a contract, do not invalidate the engagement as to his principal (Early v. Garret, 9 Barn. & C. 928, 17 E. C. Law, 522; Cornfoot v. Fowke, 6 Mees. & W. 358); more especially, if his principal is innocent of any misstatement or concealment leading to the contract.

The deputy marshal, after making the first deposition, drew up in his own handwriting a more detailed and explicit statement of the part he took in the transaction, and it certainly would appear from this amended oath, that he all the while gave the attorney and party who referred to him, to understand he had no knowledge of the practice of the court in this respect, and merely coincided with suggestions made to him by the attorney, that the undertaking of the bail was not absolute, and said nothing with intent to persuade or incline the parties to sign the bonds; and that the attorney seemed satisfied with his own construction of the bonds, and his impressions of the practice of the court, and that the bonds were signed in pursuance of his advice and assurance, and not upon any representations of the deputy.

Without placing this decision upon the facts put forth by the respective affidavits, as to the conversation with the deputy, I hold that no deceit or misrepresentation is proved, which in law or equity entitles the obligors to be relieved from the bonds; that the undertaking of the bail is absolute and not conditional, and cannot be discharged by producing the principal in court. He stands before this court on these bail bonds, precisely as he would at common law, or on his recognizance on the lapse of eight days after the returns of the capias against him, absolutely responsible for the judgment. 1 Johns. Cas.

329; 334; 2 Johns. Cas. 483; 2 Johns. 101; 9 Johns. 84; 1 Tidd, Pr. 620.

The motion does not raise the question whether the libellant is entitled to exact bail in these cases. That matter will more properly come up when an attempt is made to enforce the bonds; or it may be presented on a distinct motion to the court. As the case stands, and upon the assumption that the respondent was bound to give bail, I am compelled to say, no authority exists in this court to interfere with the rights acquired by the libellant under the respective bail bonds executed in these causes, and the motion must therefore be denied.

The parties having acted in good faith in making this application, and as it presents a new point of practice, I shall not order costs. Order accordingly.